# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00434-CV

**Matthew Perdue and Thelma Cade-Perdue, Appellants**

**v.**

**Patten Corporation, d/b/a Massachusetts Patten Corporation and Patten Corporation Southwest, d/b/a Southwest Patten Corporation, Appellees**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT NO. C-99-0570-C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## O P I N I O N

The trial court granted a no-evidence summary judgment denying a bill of review, then attempted to grant a new trial vacating its summary judgment. Two issues are presented: whether a new trial was timely granted while the court still had plenary jurisdiction, and if not, whether there is any evidence to support the necessary elements of a bill of review. We hold that the new-trial order was null and void, so the summary judgment is properly before us on appeal. Because the summary-judgment evidence raises a fact issue on each element of the bill of review, we reverse and remand this cause to the trial court.

## BACKGROUND

In 1991, Matthew Perdue and his mother, Thelma Cade-Perdue (collectively the Perdues), each bought an undeveloped lot in a subdivision developed by Patten Corporation and

Southwest Patten Corporation (collectively, Patten). The Perdues assert that before the sale and in the purchase contracts Patten represented that the lots were buildable and had available potable water. When these representations proved to be untrue, the Perdues filed suit against Patten in 1995, alleging breach of contract, violations of the deceptive trade practices act, and fraud.[1] About a year after they filed suit, their attorney Michael Kuehr was called for army reserve duty; he filed a motion to withdraw as the Perdues' counsel and substituted attorneys L. Lashelle Wilson and David Bosworth, who shared the same address.

When the court placed the cases on the dismissal docket in July 1998, it sent a notice of the "drop docket" to Patten's attorney and Kuehr—but not to Wilson or Bosworth; the cases were to be dismissed if no party appeared on August 31, 1998. When the Perdues failed to appear, the court signed an order dismissing their causes. The Perdues did not find out about the dismissal until the spring of 1999. In July 1999, Wilson filed a petition for bill of review on behalf of the Perdues. About a year later, Bosworth became the Perdues' attorney of record in place of Wilson.[2]

In July 2002, Patten filed a motion for summary judgment, asserting that there was no evidence to support three of the necessary elements of a bill of review that (1) the plaintiffs were prevented from making their claim by some fraud on behalf of the opposing party or an official mistake by the court, (2) the plaintiffs' own negligence did not contribute to the dismissal of their

---

[1] Mother and son initially pursued their claims individually; their causes were consolidated by an agreed order in August 2000.

[2] Although Wilson and Bosworth were both substituted as counsel for Kuehr in 1996, it appears that only Wilson handled the cases until 1999. Until that time, Wilson and Bosworth appear to have been practicing together or at least sharing office space, as they shared the same address and phone number. By the time Bosworth took over the cases from Wilson, he appears to have moved to a separate office.

2

claims, and (3) the plaintiffs exercised due diligence in pursuing other legal remedies against the judgment.[3] *See Narvaez v. Maldonado*, 127 S.W.3d 313, 319, 321 (Tex. App.—Austin 2004, no pet.). The court granted a no-evidence summary judgment on April 12, 2003. The Perdues filed a motion for new trial, which the court announced it was granting in a letter to counsel dated July 22, 2003; the formal order granting a new trial was entered on July 31, 2003.

## DISCUSSION

*Jurisdiction*

As a preliminary matter, this Court raised the issue of subject-matter jurisdiction to determine whether the summary judgment is properly before us on appeal. In response, the Perdues assert that we do not have jurisdiction over this cause because the trial court granted their motion for new trial, vacating the summary judgment.[4] Patten insists that the summary judgment is properly before us because the order granting new trial was ineffectual and null as it was entered three days after the court's plenary power over the case had expired. *See* Tex. R Civ. P. 329b(c), (e). The court's letter announcing the granting of a new trial was timely; its order was not.

---

[3] Patten has not challenged the other element of a bill of review: that the Perdues must have a meritorious claim. *See Jones v. Texas Dep't of Protective & Regulatory Servs.*, 85 S.W.3d 483, 487 (Tex. App.—Austin 2002, pet. denied).

[4] The Perdues alternatively argue that the summary-judgment order failed to dispose of all parties and claims and was therefore not final. They claim that the summary-judgment motion "merely requests certain evidentiary findings." We disagree. Patten's no-evidence summary-judgment motion sufficiently notifies the court of its argument that there is no evidence to support the second and third elements of a bill of review. The trial court's grant of this motion foreclosed all of the Perdues' claims, as they could challenge the trial court's dismissal of their claims only by proving the bill-of-review elements.

3

The trial court's plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment is limited to thirty days after all such timely filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first. *Id.* (e). If a motion for new trial "is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period." *Id.* (c). After the court's plenary power has expired, it may not set aside a judgment except by bill of review. *Id.* (f).

Here, the trial court signed the order granting summary judgment on April 12, 2003.[5] The Perdues filed a motion for new trial on May 12. On June 26, seventy-five days after the judgment was signed, the motion was overruled by operation of law. However, the trial court retained plenary power to set aside the judgment for thirty days, until July 28.[6] The court held a hearing on the motion for new trial on July 11 and on July 22 sent a letter to the parties stating, "Accordingly, it is the order of the Court that the Motion for New Trial filed by Plaintiffs, Matthew Perdue and Thelma Cade-Perdue, be ***GRANTED*** in all things." The letter continued, "Mr. Bosworth [the Perdues' counsel] is directed to prepare the appropriate Order for my signature and forward the same to me at my office . . . . I shall attend to the filing of the Order after signature." The Perdues

---

[5] The Perdues assert that the actual date the order was signed was likely April 21, 2003, evidenced by the fact that April 12 was a Saturday and that the order was filed on April 21. Calculating the dates from April 21, the formal order purporting to grant the motion for new trial would be timely. However, there is no evidence in the record to support this speculation, and indeed the docket sheet reflects that the order was entered on April 15; if this were the actual date, the formal order granting a new trial would not be timely.

[6] Because the thirty-day period expired on Saturday, July 26, 2003, the court's plenary jurisdiction extended until Monday, July 28. *See* Tex. R. Civ. P. 4; *McClelland v. Partida*, 818 S.W.2d 453, 455 n.2 (Tex. App.—Corpus Christi 1991, writ dism'd w.o.j.).

4

argue that this letter serves as a valid order granting their motion for new trial within the period of the court's plenary jurisdiction. The trial court signed the order granting a new trial on July 31, three days after its plenary power had expired.

Two rules of civil procedure govern our decision. Rule 329b governs the timing for taking action on motions for new trials. *See* Tex. R. Civ. P. 329b. Rule 5, in turn, clearly states, "The court may not enlarge the period for taking any action under the rules relating to new trial except as stated in these rules." *Id.* 5.

In *Reese v. Piperi*, 534 S.W.2d 329 (Tex. 1976), the supreme court addressed a similar issue, whether a trial court's oral rendition of a motion for new trial fell within the period of its plenary jurisdiction to amend or modify a judgment. The oral pronouncement came while the court still had plenary jurisdiction, but the signed written order came more than thirty days after the motion for new trial was overruled by operation of law. Because the trial court had lost its plenary jurisdiction, the judgment could only be set aside by bill of review. *See id.* at 330-31. The movants argued that the formal written order was a nunc pro tunc reflection of the oral judgment. The supreme court found that the judge's oral pronouncement represented an intention to grant the motion in the future if the parties did not work things out. *Id.* The court acknowledged that even though the trial court could have made an oral pronouncement that might serve as a present rendition of judgment, "[t]he opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination." *Id.* at 330.

The opinion then noted a "further problem" posed by rule 5:

> If an oral pronouncement by the court were to satisfy the requirements of Rule 329b(4) and if this rendition could be entered months later in the form of a nunc pro tunc order, the trial judge could extend the time for final disposition of the motion for new trial far beyond the period prescribed by Rule 329b—despite the express language of Rule 5 that the court "may not enlarge the period for taking any action under the rules relating to new trials . . . except as stated in the rules relating thereto."

*Id*. at 331.[7] The supreme court held that rule 329b, like rule 306a establishing appellate timetables, contemplated a written and signed order granting a motion for new trial that must be rendered within the period of the trial court's plenary jurisdiction. *See id.* at 331.

In *McCormack v. Guillot*, the supreme court found ineffective a docket sheet notation granting a motion for new trial and, relying on *Reese*, held that the formal written order—signed after the court had lost plenary power under rule 329b—was a nullity. 597 S.W.2d 345, 346 (Tex. 1980). The *McCormack* court also cited with approval two appellate-court cases holding that absent a formal order signed by the judge, the motion for new trial is overruled by operation of law, and the trial court loses its plenary jurisdiction thirty days after that. *See id.*; *Atkinson v. Culver*, 589 S.W.2d 164, 165-66 (Tex. Civ. App.—El Paso 1979, no writ); *Teran v. Fryer*, 586 S.W.2d 699, 700 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd).

The *McCormack* opinion also noted that there should be no distinction between the procedural requisites for the overruling of a motion for new trial, triggering appellate timetables, and

---

[7] The text of former rule 329b(5) referred to the court's "taking action" on a motion for new trial. *See* Tex. R. Civ. P. 329b(5) (West 1977, repealed 1981) ("The failure of a party to file a motion for new trial within the ten (10) day period . . . shall not deprive the district court of jurisdiction to set aside a judgment rendered by it, provided such action be taken within thirty (30) days after the judgment is rendered."). Although the current rule 329b does not use this phrase, rule 5 maintains this concept by stating that the trial court may not enlarge the period for "taking action" under rule 329b. *See* Tex. R. Civ. P. 5.

6

the granting of a motion for new trial, vacating a prior judgment in the exercise of plenary power. *See* 597 S.W.2d at 346. In each instance, the court's order must be in writing and signed. *See id.* (citing *Reese*, 534 S.W.2d at 330-31). The court held that the necessity of a "written order that is express and specific" applies equally to measuring time for appellate steps and for determining a motion for new trial during the period of the court's plenary jurisdiction.[8] *See id.* (quoting *Poston Feed Mill Co. v. Leyva*, 438 S.W.2d 366, 368 (Tex. Civ. App.—Houston [14th Dist.] 1969, writ dism'd w.o.j.)); *see also Faulkner v. Culver*, 851 S.W.2d 187, 188 (Tex. 1993) (order granting new trial must be written and signed; oral pronouncement and docket entry not sufficient).

The facts of this case are distinguishable from those in more recent appellate-court cases such as *In re Fuentes* and *Schaeffer*. *See In re Fuentes*, 960 S.W.2d 261, 264-65 (Tex. App.—Corpus Christi 1997, no writ); *Schaeffer Homes, Inc. v. Esterak*, 792 S.W.2d 567, 569 (Tex. App.—El Paso 1990, no writ). In those cases, the courts noted that present-tense language in a letter to counsel, without any directive for counsel to prepare an order, could be construed as an order if the letter was filed or otherwise appeared in the court's record. *See Fuentes*, 960 S.W.2d at 264-65;

---

[8] Furthermore, the Texas Supreme Court has determined that generally letters to counsel are not the kind of documents that constitute a judgment, decision, or order from which an appeal may be taken: "The time from which one counts days for the appellate steps is that day on which the judge reduces to writing the judgment, decision or order that is the official, formal and authentic adjudication of the court upon the respective rights and claims of the parties." *Goff v. Tuchscherer*, 627 S.W.2d 397, 398-99 (Tex. 1982). The *Goff* court concluded that a trial court's letter to counsel stating that it had overruled a plea of privilege, which also called upon counsel to prepare and present an appropriate order reflecting that ruling, did not start the clock running on the appellant's twenty-day deadline for perfecting his appeal. *Id.* Rather, the court's formal order overruling the plea of privilege signed a couple weeks later was the final judgment. *Id.* By analogy, the letter in this case manifested the trial judge's understanding that the letter was not the final, official order granting a new trial because it called on counsel to draft and submit such an order.

7

*Schaeffer*, 792 S.W.2d at 569; *see also In re Helena Chem. Co.*, 134 S.W.3d 378, 380 (Tex. App.—Waco 2003, no pet. h.) (court is to look to entire record to determine judge's intent when construing order entered within period of court's plenary power). Here, although the July 22 letter to counsel purported to grant the motion for new trial and was filed with the court clerk, it also directed counsel to prepare an order and thus indicated the court's intent that it not be the operative order. But even if the letter unequivocally attempted to serve as a final order, the letter does not constitute the formal, signed order contemplated by *Atkinson* and *Teran*. *See Atkinson*, 589 S.W.2d at 166; *Teran*, 586 S.W.2d at 700.

More importantly, both *McCormack* and *Reese* also rest their decision on the language of rule 5 that prohibits a trial court from "enlarg[ing] the period for taking any action under the rules relating to new trials." Tex. R. Civ. P. 5; *see McCormack*, 597 S.W.2d at 346; *Reese*, 534 S.W.2d at 330-31. Rule 5 prevents the trial court from expanding its jurisdiction to grant a new trial by entering a signed written order reflecting the earlier letter after its plenary jurisdiction had expired.

We agree with Patten that the trial court's July 22 letter to counsel was not an "order" for purposes of rule 329b. The formal order signed on July 31 is the controlling order. It is null because it was signed more than thirty days after the motion for new trial was overruled by operation of law. Therefore, the summary judgment was not vacated and was a final, appealable order.[9]

---

[9] Although they believed the summary judgment had been vacated by the trial court's letter, the Perdues filed a notice of appeal to preserve their right to appeal. "A party who is uncertain whether a judgment is final must err on the side of appealing or risk losing the right to appeal." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 196 (Tex. 2001).

### *No-evidence motion for summary judgment*

A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). In general, a party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch*, 118 S.W.3d at 751. When the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. A defendant who moves for summary judgment need

only negate one element of the plaintiff's cause of action. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970).

### *Bill of review*

A bill of review is an equitable proceeding brought by a party to a former action seeking to set aside a judgment that is not void on the face of the record and is no longer appealable or subject to a motion for new trial. *King Ranch*, 118 S.W.3d at 751; *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). Because it is an equitable remedy, the bill is available only when a party has demonstrated due diligence and shown that, through no fault of its own, no other legal remedy was available. *King Ranch*, 118 S.W.3d at 751. Thus, to succeed by bill of review, the petitioner must ordinarily (1) plead and prove a meritorious claim or defense to the underlying action, (2) that he was prevented from asserting by the fraud, accident, or wrongful act of his opponent or a court official in the exercise of official duties, (3) unmixed with any fault or negligence of his own. *See id.* at 537; *Narvaez*, 127 S.W.3d at 321. Additionally, a plaintiff must prove that he exercised due diligence in pursuing all adequate legal remedies to the challenged judgment or show good cause for failing to exhaust those remedies. *Narvaez*, 127 S.W.3d at 321. The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. *King Ranch*, 118 S.W.3d at 751 (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)). Patten's summary-judgment motion asserted that there was no evidence of an official mistake, of the Perdues' lack of negligence, or of the Perdues' due diligence in pursuing their claims, three essential elements of a bill of review. Because the Perdues would bear the burden of proof on a bill of review at trial,

they were required to raise a fact issue on each of these elements. Tex. R. Civ. P. 166a(i); *King Ranch*, 118 S.W.3d at 752.

A bill of review complainant who establishes "official mistake" is relieved of proving that his failure to present a meritorious claim or defense was caused by the wrongful conduct of the opposing party, the second element of a bill of review. *McRoberts v. Ryals*, 863 S.W.2d 450, 455 (Tex. 1993) (Enoch, J., dissenting); *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 408 (Tex. 1987); *Baker v. Goldsmith*, 582 S.W.2d 404, 407 (Tex. 1979). An official mistake occurs when a court official commits error in the discharge of his official duties, and that error prevents the complainant from presenting his defense in the former action or from challenging the judgment by post-judgment actions or appeal. *Mowbray v. Avery*, 76 S.W.3d 663, 683 (Tex. App.—Corpus Christi 2002, pet. denied); *see Baker*, 582 S.W.2d at 407. The official-mistake doctrine has been narrowly construed; general misconduct or wrongdoing by court functionaries is insufficient to show official mistake to satisfy the elements for a bill of review. *See Mowbray*, 76 S.W.3d at 683.

Before a lawsuit may be dismissed for want of prosecution, the trial court must mail notice of its intention to dismiss and the date and place of the dismissal hearing to each attorney of record to the address shown on the docket or in the papers on file. Tex. R. Civ. P. 165a(1); *Osterloh v. Ohio Decorative Prods., Inc.*, 881 S.W.2d 580, 581-82 (Tex. App.—Houston [1st Dist.] 1994, no writ). The record includes evidence indicating that the district court's clerk's office had knowledge that the Perdues' attorney of record was no longer Kuehr but had changed to Wilson and Bosworth as early as May 2, 1996. On that date, the Perdues filed their motion to substitute Wilson and

11

Bosworth for Kuehr.[10]  On June 5, 1996, Wilson sent a letter to the court concerning injunction bonds she had filed on behalf of her clients, the Perdues.  Additionally, in July 1996, Patten's counsel, Matthew D. Bradley, filed its first set of interrogatories with the court, indicating that they were sent to the Perdues by and through their attorney of record, Wilson.  In mid-July 1996, the Perdues filed their first set of interrogatories and request for production with the court; they were signed by Wilson and noted Wilson's address.  We conclude that this evidence creates a fact issue on whether the district court made an "official mistake" in failing to inform the Perdues' attorneys of record about the dismissal-docket setting.  Summary judgment based on this element was improper.

Patten's summary-judgment motion also asserted that there is no evidence concerning the Perdues' lack of negligence in presenting their claims.  Negligence of a party's counsel is attributed to that party for purposes of the third element of a bill of review.  *See Gracey v. West*, 422

---

[10]  Patten argues that Kuehr's motion to withdraw and substitute Wilson and Bosworth was never granted and, therefore, Kuehr was still the Perdues' attorney of record. *See Ditto v. State*, 898 S.W.2d 383, 386 n.4 (Tex. App.—San Antonio 1995, no writ) ("An attorney is still on a case until a motion to withdraw is granted, not until it is filed."), *rev'd on other grounds*, 988 S.W.2d 236 (Tex. Crim. App. 1999); *see also* Tex. Disciplinary R. Prof'l Conduct 1.15, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998) (Tex. State Bar R. art. X, § 9) (when ordered to do so by court, lawyer shall continue representation notwithstanding good cause for terminating representation).  We reject this argument because the rules do not explicitly require that a motion to withdraw and substitute be granted to apprise the court of a change in a party's counsel of record. *See Nowak v. Maddison*, 875 S.W.2d 783, 783-84 (Tex. App.—Houston [1st Dist.] 1994, no writ) (despite party's failure to obtain signed order granting motion to substitute counsel, that party's notice to court of new designated attorney of record was sufficient to put court on notice of attorney of record); *see also* Tex. R. Civ. P. 8 (attorney in charge remains as such until designation is changed by written notice to court and other parties), 10 (attorney may withdraw and another substituted upon written motion for good cause shown; new attorney must be designated as attorney of record).  An attorney remains a party's counsel of record only until there is "something appearing to the contrary in the record." *Palkovic v. Cox*, 792 S.W.2d 743, 745 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

S.W.2d 913, 916 (Tex. 1968); *Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Our review of the record indicates that the Perdues presented more than a scintilla of evidence that they were not negligent in pursuing their claims. Thelma Cade-Perdue's affidavit includes several pages of her own notes made throughout the course of the lawsuit, tracking her conversations with her attorneys and the progress being made on the case. Wilson's affidavit outlines her ongoing attention to the cases. In it, she notes that she filed the first amended petition in early August 1996, shortly before the case was set for trial; the petition included a new claim for violations of a federal law, the Interstate Land Sales Act. *See generally* 15 U.S.C.A. §§ 1701-1720 (West 1998). Patten immediately filed a motion for continuance based on this new allegation and on unresolved discovery matters: "Both sides have exchanged written discovery and, at this time, neither party has received answers to such written discovery." This motion also noted that "Plaintiff's attorneys, Mr. David Bosworth and Ms. Lashelle Wilson do not oppose this continuance."

Wilson made several court appearances on behalf of the Perdues, indicating that she was their attorney of record in various court filings. Her affidavit states that she spent until late 1996 getting up to speed on the case: reviewing the "extensive" case files, researching the issues, adding the federal claim, and preparing the amended pleading. She spent the year 1997 attempting to locate necessary fact witnesses for depositions and tracking down information provided to her in the file or through discovery answers. She stated that this was a "difficult task" because many of the witnesses had moved away. In early 1998, she began to investigate alternate witnesses for the ones that she had been unable to locate and began to search for other evidence, such as water tables from government sources. She stated, "The cases were essentially ready for final discovery and trial by

13

the end of 1998. However, I had several schedualing [sic] conflicts during that time and was not able to finalize the work needed for these cases, because my husband had developed serious heart problems beginning in June of 1998."

Although Patten cites Thelma Cade-Perdue's handwritten notes, which often indicated her and her son's frustration with Wilson for dragging her feet on the case, such evidence is not dispositive but is to be weighed by the fact-finder. Wilson's affidavit is some evidence to support a lack of negligence on the part of the Perdues. We conclude that summary judgment based on no evidence of this element of a bill of review was also improper.

Finally, the Perdues needed to create a fact issue as to their due diligence in availing themselves of all available legal remedies against the judgment of dismissal. *See Narvaez*, 127 S.W.3d at 321; *Axelrod R & D, Inc. v. Ivy*, 839 S.W.2d 126, 128 (Tex. App.—Austin 1992, writ denied). This due-diligence requirement is distinct from the three bill of review elements; complainants must allege and prove that they exercised due diligence in pursuing all adequate legal remedies to the challenged judgment or show good cause for failing to exhaust those remedies in order to be entitled to *seek* bill of review relief. *Narvaez*, 127 S.W.3d at 321 (citing *Caldwell*, 975 S.W.2d at 537; *Mowbray*, 76 S.W.3d at 682-83 n.28). If the complainants had legal remedies that were ignored, relief by bill of review is unavailable. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999); *French v. Brown*, 424 S.W.2d 893, 895 (Tex. 1967). One with an available appeal who fails to pursue that remedy is not entitled to seek relief by bill of review. *Rizk v. Mayad*, 603 S.W.2d 773, 775 (Tex. 1980).

When the evidence is uncontroverted that a party had notice of a dismissal or default judgment within the time period during which it could seek a post-judgment remedy short of a bill

14

of review, that party has not, as a matter of law, exercised due diligence if it has not sought such remedy and can offer no good cause for such failure. *See id.* at 775-76 (party who fails to urge motion for new trial or appeal when it has time to do so is not entitled to seek bill of review); *French*, 424 S.W.2d at 895 (no diligence shown and no good cause offered by defendant for failure to appeal judgment, plus no allegation that he was prevented from doing so by fraud of plaintiff, rendered bill of review unavailable); *Narvaez*, 127 S.W.3d at 321; *see also Gold v. Gold*, 111 S.W.3d 799, 803-04 (Tex. App.—Dallas 2003, pet. filed) (appellant could have filed restricted appeal before deadline and thus was not entitled to relief by bill of review). However, if a party—through no negligence of its own—fails to receive notice of a dismissal or a default judgment until a time when other legal remedies are no longer available, that party may seek a remedy in the form of a bill of review. *See Wembley*, 11 S.W.3d at 927-28 (defendant who had no notice that default judgment had become final did not lack due diligence in failing to pursue legal remedies within deadlines); *Axelrod*, 839 S.W.2d at 128-129 (conflicting testimony about when defendant learned of default judgment precluded summary judgment on due-diligence element); *Cannon v. ICO Tubular Servs., Inc.*, 905 S.W.2d 380, 388-89 (Tex. App.—Houston [1st Dist.] 1995, no writ) (evidence establishing that neither plaintiff nor his attorneys received notice of dismissal for want of prosecution in time to pursue legal remedies was legally sufficient to support bill of review); *see also Caldwell*, 975 S.W.2d at 537-38 (defendant who was not served in original proceeding and did not receive notice of default judgment until after legal remedies were no longer available could not have pursued such remedies); *Wolfe v. Grant Prideco, Inc.*, 53 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Thus, it follows that a party who receives notice of a judgment too late to pursue other legal remedies is necessarily relieved of the requirement of

showing due diligence in pursuing legal remedies against that judgment. Because we have determined that there is a fact issue concerning whether the Perdues' failure to receive notice of the dismissal hearing and subsequent dismissal was the result of official mistake, we conclude that it would be error to find as a matter of law that they had not exercised due diligence in pursuing legal remedies against a judgment they did not know about. *See Mowbray*, 76 S.W.3d at 683 ("official mistake" doctrine has been narrowly imposed within specific context of failure by court official to discharge its duties, which prevented petitioner from exercising its right to challenge judgment by post-judgment actions or appeal). We thus sustain the Perdues' issues and hold that the trial court erred in granting summary judgment in favor of Patten.

## CONCLUSION

The Perdues' summary-judgment evidence raises a fact issue on each of the challenged elements of their bill of review. We therefore reverse the summary judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Reversed and Remanded

Filed: August 12, 2004

16