# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00400-CV

**Leo Graves d/b/a Graves Tire Service, Appellant**

**v.**

**Texas Commission on Environmental Quality, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY,
### NO. D-1-GN-21-003968, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant Leo Graves d/b/a Graves Tire Service appeals from the district court's denial of a petition for bill of review seeking to overturn a final judgment entered against Graves in an environmental enforcement action brought by appellee, the Texas Commission on Environmental Quality (TCEQ, or Commission). Because we hold that Graves failed to exercise due diligence in pursuing his available legal remedies and also failed to establish a meritorious defense to the underlying judgment, we affirm the denial of the petition.

## BACKGROUND

This case originated more than a decade ago, when a TCEQ investigation conducted on May 23, 2012, determined that Graves had violated certain environmental regulations at his tire service facility in Carthage, Texas. Specifically, the investigation concluded that Graves had failed to comply with manifesting requirements applicable to persons

who transport used or scrap tires for storage or disposal, which are intended to ensure that such tires are transported to a storage site or disposal facility that is properly registered or permitted, respectively, with the TCEQ. *See* 30 Tex. Admin. Code § 328.58(d) (1999) (Texas Comm'n on Envt'l Quality, Manifest System). Additionally, the investigation concluded that Graves had failed to prevent the unauthorized disposal of used oil at the facility, resulting in unsafe levels of soil contamination observed in samples taken from four locations on the property. *See id.* § 324.4(1) (Texas Comm'n on Envt'l Quality, Federal Rule Adoption by Reference); 40 C.F.R. § 279.22(d) (related to used-oil storage).

On December 27, 2012, TCEQ's Executive Director filed a petition recommending that the Commission enter an enforcement order against Graves assessing an administrative penalty of $4,000 and requiring that certain actions be taken within 30 days of the order, including the removal of the contaminated soil to an authorized disposal facility and the development and implementation of procedures to ensure the proper completion and return of manifests for scrap tires transported from the facility in the future.

On January 17, 2013, Graves filed an answer requesting a hearing and, on February 22, 2013, the matter was referred to the State Office of Administrative Hearings (SOAH). A preliminary hearing was held on June 20, 2013, and although timely noticed, Graves did not appear or request a reset. On July 8, 2013, the Administrative Law Judge issued a conditional remand order providing that, unless Graves filed a reset request before July 22, the matter would be dismissed from the SOAH docket and remanded to the Executive Director to pursue entry of a default order by the Commission. Graves failed to request a reset within the time provided by the order, and the Commission issued a default order on October 23, 2013, in the form and substance sought by the Executive Director. *See* Texas Comm'n on Envt'l Quality,

2

*In The Matter of an Enforcement Action Concerning Leo Graves d/b/a Graves Tire Service*, Docket No. 2012-1480-MLM-E (Oct. 23, 2013) (default order). The order, which became effective on November 21, 2013, required that Graves, within 45 days, submit written certification of compliance "accompanied by detailed supporting documentation, including photographs, receipts, and/or other records" notarized by a State of Texas Notary Public.

By May 22, 2014, Graves had neither remitted any portion of the assessed penalty nor submitted the required certification of compliance, and a subsequent TCEQ investigation of the facility on that date determined that the site remained out of compliance with the default order and identified additional violations as well. As to compliance with the order, Graves's office staff was allegedly unable to provide the investigator with documentation of proper removal of the contaminated soil as required by the order.[1] As to additional violations, the investigator allegedly observed an unsegregated pile of approximately 16,000 scrap tires kept outside on the property, which put the facility in violation of registration requirements applicable to sites at which more than 500 scrap tires are kept outside. *See* 30 Tex. Admin. Code §§ 328.55 (Texas Comm'n on Envt'l Quality, Registration Requirements), .59 (Texas Comm'n on Envt'l Quality, Storage of Used or Scrap Tires or Tire Pieces). Additionally, Graves's staff allegedly could not provide the investigator with statutorily required documentation of mandatory bi-weekly vector monitoring and control measures intended to control mosquitos and other disease vectors at scrap tire storage sites. *Id.* §§ 328.60 (Texas Comm'n on Envt'l Quality, Scrap Tire Storage Site Registration), .61(e) (Texas Comm'n on Envt'l Quality, Design Requirements for Scrap Tire Storage Site), .62(b)(6) (Texas Comm'n on Envt'l Quality, Scrap Tire Storage

---

[1] Later, on June 4, Graves would allegedly tell the investigator that he had personally moved the contaminated soil to another location on the property.

Site Record Keeping), .63(d)(3) (Texas Comm'n on Envt'l Quality, Scrap Tire Facility Requirements).

On September 11, 2015, and January 26, 2016, TCEQ conducted further compliance investigations at the facility and concluded that the violations persisted: Graves continued to store approximately 16,000 scrap tires at the unregistered site; he still was not conducting vector controls for the tires; and he still had not removed the contaminated soil from the property. Also on those dates, TCEQ investigated another property Graves owned, the Leo Graves RV Park, also located in Carthage, Texas. During those investigations, investigators allegedly observed three piles of partially buried scrap tires totaling more than 500 in violation of above-mentioned registration requirements. *Id*. § 328.55 (Texas Comm'n on Envt'l Quality, Registration Requirements).

On April 26, 2016, the State of Texas, through the Office of the Attorney General (OAG) and on behalf of the TCEQ, filed a petition and application for injunctive relief in Travis County district court seeking to enjoin Graves from further storage or disposal of municipal solid waste at either the tire service facility or the RV park and to require that he remove all tires from the RV park, remove all tires in excess of 500 from the tire facility, and begin performing and documenting vector control measures on any remaining tires stored outside at the tire facility. The petition also sought to require that Graves remove the oil-contaminated soil from the tire facility and sought administrative penalties, attorney's fees, and pre-judgment interest.

Graves timely filed a pro se answer and general denial, but there was little movement in the litigation while TCEQ enforcement activities continued. For example, during a site visit on July 14, 2016, the TCEQ investigator noted that most of the scrap tires observed during previous investigations had been removed from the tire service facility, and Graves was

4

able to provide the investigator with manifests. During a subsequent visit on May 10, 2018, however, the investigator observed 2,000 scrap tires at the site, when Graves still lacked authorization to have more than 500 scrap tires on the premises. Still later, on April 24, 2020, during another follow-up visit to the still-unregistered site, the investigator observed three separate piles of unsegregated scrap tires outside containing approximately 10,000 tires.

Meanwhile, in the enforcement suit, the parties entered into an agreed scheduling order setting the case for trial during or after the week of August 3, 2020. In accordance with the time frame set forth in that order, on February 24, 2020, the State served requests for admission on Graves to which he apparently never responded.

On June 10, 2020, the State filed a motion for summary judgment on all claims. Graves did not file a response but appeared telephonically at the July 15 hearing on the motion and requested additional time in which to respond. The trial court granted Graves' request, giving him until September 15 to respond, after which the State would have until September 28 to reply, and the court would consider the motion on submission. Graves filed his response on September 30, 2020, just hours after the trial court entered final judgment granting the State's motion. In addition to the requested injunctive relief, the trial court entered judgment for the State for statutory civil penalties, administrative penalties, and attorney's fees and court costs totaling $174,250. Notice of the judgment was provided to Graves by email on September 30, 2020, and by personal service on October 13, 2020. Previously unrepresented, Graves retained counsel and timely filed a motion for new trial on October 30, 2020, but no further action was taken on the motion, and it was overruled by operation of law.

Graves did not appeal the summary judgment but, on August 13, 2021, represented by new counsel, Graves filed the petition for bill of review that is the subject of the

present appeal, in which he sought to have the latter judgment overturned. TCEQ timely answered and, on October 27, 2021, filed an amended answer and plea to the jurisdiction seeking dismissal of the bill of review on the alternative grounds that Graves lacked standing to bring the bill due to his failure to appeal the complained-of judgment and that, in any case, the bill should be denied on the merits. Following a hearing on November 12, 2021, the trial court took the matter under advisement and, on June 23, 2022, issued an order granting TCEQ's plea to the jurisdiction and, in the alternative, denying the bill of review on the merits. The parties did not request, and the trial court did not enter, findings of fact or conclusions of law. This appeal followed.

## DISCUSSION

Graves raises two issues on appeal—that the trial court erred in failing to apply the elements or follow the procedural framework applicable to bills of review and that the trial court erred in failing to grant the bill of review.

A bill of review is an equitable proceeding to set aside a judgment that is no longer appealable or subject to a motion for new trial. *See Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979); *Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex. 1975). A bill of review is proper where a party has exercised due diligence to prosecute all adequate legal remedies against the judgment it seeks to set aside, and at the time the bill of review is filed, no adequate legal remedy remains available because, through no fault of the petitioner, fraud, accident, or official mistake precluded presentation of a meritorious claim. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999). To obtain relief by a bill of review, the petitioner must plead and prove three elements: (1) a meritorious ground for appeal; (2) which the petitioner was

prevented from making through fraud, accident, or a wrongful act of the opposing party or official mistake; (3) unmixed with any fault or negligence by the petitioner. *See Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004); *Zeigler v. Zeigler*, No. 02-10-00146-CV, 2011 WL 2989003, at *2 (Tex. App.—Fort Worth July 21, 2011, no pet.) (mem. op.). "A petitioner must additionally demonstrate that [they] exercised due diligence to assert all adequate legal remedies before filing a bill of review, and the petitioner is not entitled to a bill of review when [they] failed to invoke the right of appeal or some other legal remedy when it was available unless an adequate explanation is advanced for bypassing the legal remedy." *Bialaszewski v. Bialaszewski*, 557 S.W.3d 88, 91 (Tex. App.—Austin 2017, no pet.) (citation omitted). The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950); *see Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940) (noting that bill of review requires "something more than injustice").

We review the grant or denial of a bill of review under an abuse-of-discretion standard, indulging every presumption in favor of the trial court's ruling. *Moore v. Brown*, 408 S.W.3d 423, 432 (Tex. App.—Austin 2013, pet. denied). The trial court abuses its discretion if it rules in an unreasonable or arbitrary manner, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Morris v. O'Neal*, 464 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Where, as here, there are no findings of fact or conclusions of law in the record, we will "affirm the trial court's judgment on any legal theory supported by the evidence." *Narvaez v. Maldonado*, 127 S.W.3d 313, 319 (Tex. App.—Austin 2004, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)).

As noted above, a bill-of-review petitioner must exercise due diligence in pursuing all appropriate legal remedies against the former judgment. *See Wembley*, 11 S.W.3d at 927. If reasonable legal remedies were available and disregarded, relief by bill of review is generally unavailable. *See id.* The required due diligence is separate and distinct from the bill-of-review elements. *Perdue v. Patten Corp.*, 142 S.W.3d 596, 606 (Tex. App.—Austin 2004, no pet.). A petitioner's due diligence in pursuing available legal remedies is evaluated under the objective standard of care that "prudent and careful [persons] would ordinarily use in their own cases of equal importance." *Headifen v. Harker*, No. 03-16-00028-CV, 2017 WL 3902623, at *2 (Tex. App.—Austin Aug. 30, 2017, pet. denied) (mem. op.) (quoting *In re A.L.H.C.*, 49 S.W.3d 911, 916 (Tex. App.—Dallas 2001, pet. denied)).

The Texas Supreme Court has established that where a defendant fails to avail itself of an appeal, the defendant is not entitled to relief by bill of review. *French v. Brown*, 424 S.W.2d 893, 895 (Tex. 1967). In *French*, the bill-of-review petitioner, aggrieved by the underlying summary judgment, timely filed a motion for new trial but failed to appeal from denial of that motion after it was overruled by operation of law. *Id.* at 894. The *French* court held that, because the bill-of-review petitioner had "permitted the judgment to become final by his failure to invoke the right of appeal" and there was "no showing of diligence," there was insufficient cause for relief by bill of review. *Id.* at 895.

Similarly, in *Narvaez v. Maldonado*, the trial court entered a default decree of divorce that ordered Narvaez to pay child support, and Narvaez filed a motion for new trial that was subsequently overruled by operation of law. 127 S.W.3d at 316. Though evidence did not show whether the motion was timely, this Court held that Narvaez had not exercised due diligence in exhausting his legal remedies because he had not appealed the judgment after the

8

motion was overruled by operation of law or pursued a restricted appeal. *Id*. at 321; *see also Headifen*, 2017 WL 3902623, at *2 (denying bill of review where petitioner had filed motion for new trial but had failed to appeal from complained-of judgment after motion was overruled by operation of law).

Graves is in substantially the same position as were the bill-of-review petitioners in *French*, *Narvaez*, and *Headifen*. After entry of the complained-of summary judgment on September 30, 2020, Graves timely filed a motion for new trial on October 30, 2020. Our rules provide that, "[i]n the event an original or amended motion for new trial . . . is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period." Tex. R. Civ. P. 329b(c). Moreover, where a party timely files a motion for new trial, notice of appeal must be filed within 90 days after the judgment was signed. Tex. R. App. P. 26.1(a)(1). Accordingly, Graves's motion was overruled by operation of law on December 15, 2020, and Graves had until December 29 to appeal. No appeal was filed in that time period, and he therefore failed to show the requisite diligence required under *French* and related authorities.

Rather than dispute the foregoing facts, Graves in his first issue on appeal instead complains that the trial court departed from the procedural framework set forth in *Baker*. Moreover, Graves contends that TCEQ's plea to the jurisdiction was not properly noticed and, in any case, could not properly be considered by the trial court at the time of the November 12 hearing. In its response, TCEQ contends that in setting and noticing the hearing, Graves failed to designate it a "*Baker* hearing" and that it was in reality a full hearing on the merits. Alternatively, TCEQ argues that even if the hearing were a *Baker* hearing, the trial court could

consider the issues raised in TCEQ's plea because they concerned threshold issues—including jurisdiction—that must be determined before reaching the merits.

Graves cites *Beck v. Beck* for the proposition that, in "conducting the pre-trial hearing authorized by *Baker v. Goldsmith*, the only relevant inquiry is whether the petitioner has presented prima facie proof of a meritorious defense." 771 S.W.2d 141, 142 (Tex. 1989). Moreover, TCEQ cites no authority, and this Court is aware of none, for the argument that Graves's failure to appeal the complained-of judgment deprived him of standing and thus ousted the trial court of subject-matter jurisdiction. However, as this Court has held, the due-diligence requirement set forth in *French* and elsewhere "is distinct from the three bill of review elements; complainants must allege and prove that they exercised due diligence in pursuing all adequate legal remedies to the challenged judgment or show good cause for failing to exhaust those remedies in order to be entitled to *seek* bill of review relief." *Perdue*, 142 S.W.3d at 606 (emphasis in original); *see also Rizk v. Mayad*, 603 S.W.2d 773, 775 (Tex. 1980) ("One with an available appeal who fails to pursue that remedy is not entitled to seek relief by way of a bill of review"). Thus, regardless of whether the diligence requirement is jurisdictional, TCEQ is correct that the trial court could properly consider it as a threshold issue.

The latter authorities are not inconsistent with the above-quoted language in *Beck*. In *Beck*, the trial court denied a petition for bill of review on the ground that the petitioner had failed to make a prima facie showing of a meritorious defense but, rather than address that first element, this Court instead affirmed on the ground that the petitioner's sworn pleadings, as a matter of law, established her negligence, thus seeming to reach the third element on which no record had been developed in the trial court. 771 S.W.2d at 141. The supreme court reversed, holding that, in that procedural posture, this Court's decision "erroneously converted the pre-trial

hearing authorized by *Baker* . . . into a summary judgment proceeding on all elements of [the petitioner's] bill of review." *Id*. That is not the case here. In this case, we neither pass upon the question of whether Graves was negligent, nor reach any issue that the trial court did not. Rather, we merely apply the exhaustion requirement set forth in *French* and other authorities.

This case is also distinguishable from *Beck* because, unlike the petitioner in that case, Graves had an opportunity to "demonstrate that [he] exercised due diligence to assert all adequate legal remedies before filing a bill of review" or provide "an adequate explanation . . . for bypassing the legal remedy." *Bialaszewski*, 557 S.W.3d at 91. Review of the record discloses no serious attempt to make that showing, beyond a general assertion that then-in-effect social-distancing practices in response to the COVID-19 pandemic frustrated Graves's attempt to retain appellate counsel. As TCEQ points out in its brief, at least one other Texas court of appeals has declined to accept a bill-of-review petitioner's bare invocation of the pandemic and the resulting difficulty in locating counsel as an adequate explanation for the failure to perfect an appeal in this scenario, and we likewise decline to do so today. *See Castleman v. Internet Money Ltd.*, No. 07-20-00312-CV, 2021 WL 2306266, at *3 (Tex. App.—Amarillo June 4, 2021, no pet.).

As to the question of whether that requirement is jurisdictional, as TCEQ urges, we need not and therefore must not reach that question today. Because we may "affirm the trial court's judgment on any legal theory supported by the evidence," *Worford*, 801 S.W.2d at 109, and because facts supporting the trial court's conclusion that Graves lacked standing would with equal force support denial of the petition for failure to exhaust legal remedies, we affirm that denial without deciding whether it was on jurisdictional grounds. We overrule Graves's first issue on appeal.

In his second issue, Graves contends that the trial court erred in denying his petition because he made out a prima facie showing of a meritorious defense. We disagree.

"A bill of review petitioner must allege, with particularity, sworn facts sufficient to constitute a meritorious claim or defense in the original suit and, as a pretrial matter, present prima facie proof to support the contention." *Martin-de-Nicolas v. Jones*, No. 03-18-00778-CV, 2020 WL 1966311, at *3 (Tex. App.—Austin Apr. 24, 2020, pet. denied) (mem. op.) (citing *Caldwell*, 154 S.W.3d at 97). "A prima facie meritorious defense is made out when it is determined that the [bill-of-review petitioner's] defense is not barred as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered." *Baker*, 582 S.W.2d at 408–09. Whether a petitioner has made out a prima facie meritorious defense is a question of law. *Id*. at 409. "Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion." *Id*. For that purpose, "factual questions arising out of factual disputes are resolved in favor of the complainant." *Id*. "If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case." *Id*.

Reviewing Graves's evidence de novo and presuming it is true, we conclude that Graves would not be entitled to judgment on retrial if no contrary evidence were offered. His testimony and documentary evidence were either wholly conclusory, thus lacking the requisite "particularity," or else failed to negate the factual bases for the judgment. For example, Graves in his brief complains of the trial court's failure to credit his "denial of [TCEQ's] claim in its traditional motion [for] summary judgment that he caused, suffered, allowed, or permitted a violation of the environmental statutes, rules, or orders of the TCEQ," but such language simply

states a legal conclusion—that no violation occurred—rather than asserting any specific facts purporting to negate or rebut allegations of a violation.

During the hearing, Graves testified to facts that would not constitute a defense to the violations alleged in TCEQ's motion for summary judgment. For example, as to the oil-related violations, TCEQ had alleged that soil samples collected from the tire site "confirmed a Total Petroleum Hydrocarbon level of 92,100 mg/kg," indicative of oil contamination. The Commission further alleged that, during a May 22, 2014, follow-up inspection, Graves's staff was unable to provide documentation specifically required by the October 23, 2013, default order, such failure itself constituting a violation of Section 7.101 of the Texas Water Code. Tex. Water Code § 7.101. Rather than refute these allegations, Graves in his testimony instead attempted to recast the allegations as *de minimis*, testifying that the contamination resulted from a five-gallon bucket of used motor oil from his vehicles that had spilled without his knowledge, and that the unnamed persons he called to request cleanup and removal to an authorized disposal site advised him that it was an insufficient quantity to warrant removal:

> I had a bucket of oil, a five-gallon bucket of oil. I had changed my oil in my vehicles, and it was in the back of the shop. There came a big rain . . . . Why it happened at that particular time, I don't know, but the water had spilled into the bucket and ran the oil over the bucket and spilled out on the ground. . . . And it was about a five feet area where the oil had spilled out of the bucket. . . . So I wanted to do the right thing. I called the guys out to pick the oil up, to clean the oil and the soil and to pick it up. They came out there. They didn't see there's enough to really fine me or to have charged me to pick the dirt up. So I took the dirt with my shovel and put it over to the side to make sure, so if they would come up against me, I had dirt to show what minor oil and dirt that I had exposed that they accused me of so I won't be in violation. I've got proof. It stayed there three or four years.

13

Far from establishing prima facie proof of a meritorious defense, the foregoing testimony rather constitutes an admission of facts made the basis of TCEQ's motion.

Similarly, with respect to the tire-related violations, Graves's hearing exhibits included manifests showing the removal of tires from the facility on various dates, but neither the exhibits, nor Graves's testimony, refute TCEQ's evidence of observed violations during date ranges specified in the motion for summary judgment. For example, TCEQ had alleged that there were more than 500 used or scrap tires stored outside on the ground at service facility between May 22, 2014, and September 11, 2015, and again betw6een May 10, 2018, to April 24, 2020, with each day of the continuing violation constituting a separate violation under Section 7.102 of the Texas Water Code. Tex. Water Code § 7.102. Graves's testimony and exhibits tend to show that tires were removed from the facility at various times but do not suffice to establish that the tires were not present on the dates certain that TCEQ personnel observed and documented the violations.

Again, with respect to disease vectors, Graves testified that he conducted control measures "[f]or mosquito, not for rats," and that he sprayed the tires "two or three times a year," but kept no record of such measures "because I didn't think it was a big major problem." The code provisions Graves is alleged to have violated, however, require that stockpiles of used or scrap tires be monitored for vector control, that "appropriate vector control measures shall be applied when needed, but in no event less than once every two weeks," and that such measures be recorded in a "daily log." 30 Tex. Admin. Code §§ 328.62(b)(6), .63(d)(3).

In summary, evidence adduced at the bill-of-review hearing would support the conclusion that Graves failed to make out a prima facie showing of a meritorious defense because, even absent contrary evidence, Graves's evidence would not entitle him to judgment on

14

retrial.  Because we "affirm the trial court's judgment on any legal theory supported by the evidence," *Narvaez*, 127 S.W.3d at 319, we affirm the denial of the bill of review on the ground that Graves failed to present prima facie proof of a meritorious defense.

## CONCLUSION

Having overruled Graves's appellate issues, we affirm the district court's judgment.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   August 20, 2024