# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00769-CV

**Carol Hagerman, Appellant**

**v.**

**Wells Fargo; Rudolph Schwausch; Associates Commercial Corporation; Keith Fiala; Majestic Trucking, Inc.; and Charles Hagerman, Appellees**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 99-634-C368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a suit filed by appellant Carol Hagerman, *pro se*, alleging causes of action for conversion, money had and received, and conspiracy against appellees Wells Fargo, Rudolph Schwausch, Associates Commercial Corporation ("Associates"), Keith Fiala, Majestic Trucking, Inc., and Charles Hagerman.[1]  Hagerman's claims revolved around the sale of a 1987 Peterbilt Tractor and a 1985 Freuhauf Trailer ("the tractor/trailer"), which was sold to Fiala as part of the Hagermans' division of property in their Arizona divorce proceeding.  Two years after the transaction was complete, Hagerman sued the appellees in Texas, claiming that she had never consented to the sale.  Ultimately, the trial court entered sanctions against Hagerman for her failure

---

[1]  To distinguish between the Hagermans, we will refer to Carol as "Hagerman," and to Charles as "Charles Hagerman."  Also, we will refer to the bank by its current name, "Wells Fargo," although it was known as "Walburg State Bank" during the relevant events.

to comply with discovery orders and granted summary judgments in favor of Wells Fargo, Schwausch, Associates, and Majestic Trucking. Her remaining claims against Fiala and Charles Hagerman were dismissed approximately two years later for want of prosecution. Hagerman now appeals, asserting that the trial court abused its discretion by granting summary judgment, ordering that she had waived her attorney-client privilege, imposing monetary and evidentiary sanctions against her, and dismissing her case. We will affirm.

## BACKGROUND

**Facts regarding sale agreement**

During their marriage, the Hagermans jointly owned the tractor/trailer, which was subject to liens held by Wells Fargo as security for a loan taken out by the Hagermans. The loan was set to mature approximately one month after Hagerman filed for divorce. Charles Hagerman averred in his affidavit that "[a]t the time, we were behind on our payments to [Wells Fargo] and needed to sell at least one of the trucks."[2] Thus, the sale of the tractor/trailer was an urgent component of the property division in the Hagermans' divorce proceeding. The notes from Hagerman's initial client meeting with her divorce attorney, Bruce Childers, reflect that Hagerman contemplated the sale of the tractor/trailer from the beginning, and Childers confirmed this fact in his deposition.

On June 10, 1997, the loan on the tractor/trailer went into default. That same week, the Hagermans received an offer from Keith Fiala to purchase the tractor/trailer. On June 17, Childers sent a letter to Charles Hagerman's attorney, Stuart Gerrich, to confirm the receipt of Fiala's

---

[2] The Hagermans were involved in the trucking business and owned multiple trucks for that purpose.

offer. The letter further stated that Childers "ha[d] asked Carol [Hagerman] to look at the offer and . . . get [Childers] a decision no later than . . . June 18." Childers again wrote Gerrich on June 24, stating in relevant part, "our clients have agreed on the sale of the [tractor/trailer]. We have in our possession a copy of an offer from Keith Fiala for the purchase [price] . . . of $38,500.00. The parties have agreed on that purchase price."

The Hagermans and their attorneys appeared in the Arizona court on June 30, and the attorneys announced to the court that the parties had stipulated to the sale agreement. The court's minute entry reflects that the "parties have agreed to sell the [tractor/trailer] for the sum of $38,500.00." Hagerman testified that she was present in open court when Childers announced the agreement and that Childers was representing her at the time. Charles Hagerman averred that, after the attorneys announced the agreement in open court, "I recall the judge asking both Carol Hagerman and I whether the agreement that had been announced was accurate. We both said that it was." Gerrich's deposition testimony confirmed these facts. Later that day, Childers sent a third letter to Gerrich confirming the sale agreement. In relevant part, the letter stated that, "In accordance with the parties' stipulation in open court on this date, the parties have agreed to sell the tractor and trailer located in Arizona to Mr. Keith Fiala for a purchase price of $38,500.00."

Once the agreement was final, Charles Hagerman notified Wells Fargo of the sale and provided the bank various supporting documents, including Childers's letter to Gerrich and the court's minute entry. Fiala financed the purchase of the tractor/trailer with a loan from Associates. Associates sent a $40,000 check for Fiala's purchase to Wells Fargo. Wells Fargo deducted $5,188.36 and $5,739.22 from the received funds to pay off the Hagermans' defaulted liens on the

3

tractor/trailer and then released the liens and transferred the titles to Associates. Wells Fargo then returned the $1,500 overpayment to Fiala and held the remainder of the funds ($27,572.42) pending further instruction from the Hagermans.

Possession of the tractor/trailer was delivered by Charles Hagerman to one of Fiala's drivers during the first week of July 1997. Fiala executed a lease agreement on July 10, whereby Majestic Trucking would lease the tractor/trailer from Fiala.

Rudolph Schwausch was the Wells Fargo bank officer who handled the administration of the funds and the release of the liens. According to Schwausch's affidavit, he had not received any instructions from the Hagermans as of August 21, 1997. "In the meantime, however, two other loans the Hagermans had with the bank had gone into default." One of these loans had a balance of $16,094.31, and the other had a balance of $5,939.01. As stated in the loan documents, Wells Fargo had a right of "set-off" in the event of default. Thus, Wells Fargo applied part of the remaining $27,572.42 to these outstanding balances and sent the Hagermans a check for the remaining $5,539.10, with a letter explaining the calculation of the amount. The letter's certified return receipt demonstrates that Carol Hagerman signed for the letter on August 25, 1997.

Schwausch further averred that, "some time after Carol Hagerman received the $5,539.10 check from the bank, she called me and demanded that the bank reissue the check in her name alone." Schwausch explained to Hagerman that he could not do so because the loan was held jointly in both her and Charles Hagerman's names. According to Schwausch, Hagerman then "became irate" and threatened to sue the bank.

4

Hagerman subsequently moved to Texas and, on June 10, 1999—two years after the sale agreement had been finalized—she filed suit against Wells Fargo, Schwausch, Associates, Fiala, Majestic Trucking, and Charles Hagerman, claiming that they were each aware of her objection to the sale of the tractor/trailer but had engaged in the transaction anyway.[3] On this basis, Hagerman asserted that the defendants/appellees were liable for (1) conversion because they exercised dominion or control over the tractor/trailer in violation of Hagerman's rights as owner, (2) "money had and received" because they generated income from leasing the tractor/trailer that Hagerman, as the rightful owner, was entitled to, and (3) conspiracy because they had each participated in depriving Hagerman of her ownership interests and resulting income.

**Facts regarding waiver of attorney-client privilege and discovery-abuse sanctions**

Hagerman was deposed on May 31, 2000. During her deposition, Associates questioned her about several documents that she had failed to produce in response to its first request for production, which had been filed in November 1999. On the record, Hagerman promised that she would produce several of these documents.

Also during Hagerman's May 2000 deposition, when asked about her claim of "lack of consent" despite her presence in court when Childers announced the sale agreement, Hagerman asserted for the first time that Childers was not authorized to announce that stipulation or to send the confirmation letter to Gerrich. She admitted that she had confirmed for the judge that Childers had

---

[3] Hagerman was represented by Richard Anton at the time she filed suit. It is not clear from the record exactly when this attorney-client relationship was terminated and Hagerman began proceeding *pro se*, but as of April 20, 2000, Hagerman was signing her correspondence "in propria persona."

accurately announced the agreement's "essential terms," but claimed she also said that the deal "had not been solidified." Based on this testimony, Childers's authority became an important issue in the suit, and the defendants sought discovery of the communications between Hagerman and Childers.

On July 7, 2000, Associates sent Hagerman a second request for production, specifically seeking documents related to the communications between Hagerman and Childers about the sale of the tractor/trailer. Hagerman did not respond.

Because Hagerman had failed to respond to Associates's requests, Associates filed a motion to compel production. On July 29, 2000, the court granted Associates's motion, ordering Hagerman to produce all documents related to communications between her and Childers about the sale of the tractor/trailer and ordering that her attorney-client privilege was waived to permit the defendants to obtain discovery on these matters. The court refused Associates's request to sanction Hagerman for the attorneys' fees incurred by Associates in relation to this matter.

When Hagerman continued to refuse to produce the documents, Associates sought discovery directly from Childers. Although Childers produced some documents at his August deposition,[4] he testified that he had forwarded Hagerman's file to her new attorney, Michael Miller, and had not kept copies of the majority of the file. Hagerman had not previously disclosed the fact that she had fired Childers and obtained Miller as divorce counsel. Thus, on September 6, Associates requested by letter that Hagerman produce the documents in Miller's possession related

---

[4] Initially, Childers refused to comply, claiming that the Texas court's order waiving Hagerman's attorney-client privilege did not apply to him and requiring that Hagerman execute a written waiver of the privilege. Hagerman refused to do so, causing Associates to file an emergency motion to compel Hagerman to execute the waiver on August 10. Although the record does not expressly reflect the outcome of this motion, Childers agreed to be deposed on August 15.

to her communications with Childers about the sale of the tractor/trailer, as well as the outstanding documents previously requested, promised and/or ordered to be produced.

As of September 19, Hagerman had not complied with the July 29 order and had not produced documents responsive to Associates's first or second requests, including those that Hagerman had promised to produce during her deposition, or to Associates's request for the Miller documents. Thus, Associates filed a second motion to compel, requesting the court to order that Hagerman produce these documents and to enter sanctions against Hagerman, including monetary sanctions for Associates's attorneys' fees and evidentiary sanctions in the form of an order precluding Hagerman from introducing any evidence to deny that she consented to the sale or any documents that she previously failed to produce.

On September 20, Hagerman sent a letter to Associates, claiming that she had produced everything she was able to produce, which included seventeen exhibits attached to a previous objection Hagerman had filed and five documents attached to the letter. She also noted that Childers had produced twenty-seven additional pages and stated that, if Associates wanted to copy Miller's entire file, it could prepare a waiver and she would sign it.

After conducting a hearing on Associates's second motion to compel, on October 9, 2000, the trial court ordered Hagerman to produce by October 20 documents that were (1) required by its June 29 order, (2) provided to Miller by Childers, (3) responsive to Associates's first and second requests for production, and (4) promised by Hagerman in her deposition. The court also sanctioned Hagerman $1,000 for Associates's attorneys' fees but refused Associates's request for evidentiary sanctions.

As of November 3, Hagerman had not produced any additional documents, and Associates again moved for evidentiary sanctions—namely, that the court enter a finding that Hagerman had consented to the sale and preclude Hagerman from introducing any evidence to the contrary—as well as additional monetary sanctions. The trial court granted Associates's motion on December 7, 2000. Specifically, the court (1) entered a finding that "Hagerman consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500," (2) ordered that "Hagerman is further precluded from introducing any evidence to deny that she consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500," and (3) sanctioned Hagerman $1,500 for Associates's attorneys' fees.

On January 3, 2001, Hagerman sought a rehearing on the motion for sanctions, again arguing that she had produced everything in her possession. She claimed to have obtained the file from Miller and, upon determining that only one document offered different information than what was previously produced, sent the single document to Associates. Associates responded that it should not be forced to rely on Hagerman's personal assessment of the file when she had been ordered months before to produce it in full and that it was improper discovery procedure to put the burden on the requesting party to "prepare a waiver" and then go make copies of the file. Hagerman's motion was overruled.

**Facts regarding summary judgments and dismissal**

On March 15, 2001, Wells Fargo, Schwausch, and Majestic Trucking jointly moved for summary judgment, asserting that Hagerman could not establish the essential elements of her claims because she had expressly consented to the sale of the tractor/trailer, as reflected by the

minute entry demonstrating that the parties' agreement was announced in open court and Childers's written confirmation letter of the agreement. *See* Tex. R. Civ. P. 166a(c), (i). The movants also noted that the court had already judicially determined that Hagerman consented to the sale and ordered that she was precluded from introducing evidence to the contrary. The court granted this motion on October 24, stating that there was "no genuine issue of material fact" as to any of Hagerman's claims against Wells Fargo, Schwausch, and Majestic Trucking.

On May 25, 2001, Associates moved for summary judgment on Hagerman's conversion and conspiracy claims, also asserting that, based on the evidence presented and the court's previous orders regarding Hagerman's consent to the sale, Hagerman's claims failed as a matter of law. *See id*. Associates's motion did not address the money had and received claim because Hagerman's petition did not name Associates in relation to this cause of action. The court granted Associates's motion on September 21 without stating any grounds.

Hagerman attempted to appeal the summary judgments, but her appeal was dismissed by this Court for want of jurisdiction because there had not yet been a final judgment against all defendants—namely, Fiala and Charles Hagerman.[5] *See Hagerman v. Walburg State Bank*, No. 03-01-00536, 2002 Tex. App. LEXIS 656, at *3 (Tex. App.—Austin Jan. 31, 2002, no pet.). On October 17, 2003, after Hagerman had taken no further actions in the trial court for approximately two years since the second summary judgment was issued, the court informed Hagerman that her

---

[5] The current status of Fiala and Charles Hagerman is unclear. These appellees did not file briefs. The record reflects a letter sent by Fiala's counsel to Hagerman on May 22, 2000, stating that she should desist efforts to collect from Fiala because he had filed bankruptcy. The other appellees' briefs state that correspondence sent to Charles Hagerman's last known address has been returned as undeliverable.

case was being placed on the dismissal docket. Although Hagerman appeared at the November 24 dismissal hearing and claimed to have attempted calling the court twice during the two-year period, the court did not find merit in her claims and, thus, dismissed her case for want of prosecution.

**Facts regarding Hagerman's appeal**

Hagerman now appeals, *pro se*. Although it is not entirely clear what issues Hagerman complains about, construing her brief liberally, we interpret Hagerman's complaints to be that the trial court abused its discretion by:

(1) granting summary judgment in favor of Wells Fargo, Schwausch, Majestic Trucking, and Associates on Hagerman's claims of conversion, money had and received, and conspiracy;

(2) ordering that Hagerman had waived her attorney-client privilege;

(3) imposing monetary sanctions ($1,000 on October 9 and $1,500 on December 7 for Associates's attorneys' fees) and imposing evidentiary sanctions (entering a finding that "Hagerman consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500" and ordering that "Hagerman is further precluded from introducing any evidence to deny that she consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500" on December 7); and

(4) dismissing her case for want of prosecution.[6]

---

[6] Hagerman also argues, in a single paragraph, that the "trial court should have given appellant an opportunity to amend the pleading based on the merits." It is not clear from her argument, however, what amendment Hagerman desired, and the record no where reflects that Hagerman moved to amend her pleadings. Additionally, in a one-sentence "issue," Hagerman asserts that "the trial court denied any discovery per Appellant's requests." There is nothing more presented in her brief to inform this Court what discovery was "denied" or what requests Hagerman made. Further, the record does not independently reflect that Hagerman was improperly denied discovery or that such an issue was raised before the trial court.

**ANALYSIS**

**Summary Judgment**

A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial; and (2) the nonmovant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we "must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion" to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 604 (Tex. App.—Austin 2004, no pet.).

In a traditional summary judgment, the movant carries the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). To be entitled to traditional summary judgment, a defendant must conclusively negate at least one

Because Hagerman's brief contains no "clear and concise argument" on the issues of amended pleadings or denied discovery, we do not consider these contentions on appeal. *See* Tex. R. App. P. 38.1(h). We also note that, in order to prevent unfair advantage, *pro se* litigants are held to the same standards as licensed attorneys and are required to comply with applicable laws and procedural rules. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978).

essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

In a case where the trial court's judgment does not specify the grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex. 2005); *Sheshunoff v. Sheshunoff,* 172 S.W.3d 686, 692 (Tex. App.—Austin 2005, pet. denied). Here, without stating the grounds, the trial court granted summary judgment on Hagerman's conversion and conspiracy claims in favor of Wells Fargo, Schwausch, Majestic Trucking, and Associates; and on Hagerman's money had and received claim in favor of Wells Fargo, Schwausch, and Majestic Trucking.[7]

### *Conversion*

The supreme court has defined conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.44 (Tex. 2002) (citation omitted). To establish a claim for conversion of personal property, Hagerman must have put forth at least a scintilla of evidence to demonstrate that: (1) she owned or had legal possession of the tractor/trailer or an entitlement to possess it; (2) appellees unlawfully and without authorization assumed and exercised dominion and

---

[7] Technically, Hagerman's petition did not name Majestic Trucking in relation to her conversion claim, nor did it name Wells Fargo or Schwausch in relation to her money had and received claim. However, because the court's October 24 summary judgment order referred globally to Wells Fargo, Schwausch, and Majestic Trucking in relation to all of Hagerman's claims, we consider the claims as such on appeal. Yet, we do not consider Associates in relation to the money had and received claim because the court's September 21 summary judgment order, which was granted in favor of Associates, was based only on the conversion and conspiracy claims due to Hagerman's petition not naming Associates regarding the money had and received claim.

12

control over the tractor/trailer to the exclusion of, or inconsistent with, Hagerman's rights as the owner; (3) Hagerman demanded return of the tractor/trailer; and (4) appellees refused to return the property. *See Smith v. Maximum Racing, Inc.*, 136 S.W.3d 337, 341 (Tex. App.—Austin 2004, no pet.).

The trial court correctly granted summary judgment in favor of Wells Fargo, Schwausch, Majestic Trucking, and Associates on Hagerman's conversion claim because these appellees conclusively negated, as a matter of law, the first element of her claim: ownership. *See id.*; *see also* Tex. R. Civ. P. 166a(c). It is undisputed that, from Hagerman's initial client meeting with Childers, the sale of the tractor/trailer was contemplated as part of the Hagermans' divorce. Further, it is undisputed that Childers sent two letters to Charles Hagerman's attorney, Gerrich, in preparation for the finalization of the agreement. The first expressly stated that Hagerman was reviewing the offer's terms, and the second letter, sent one week later, confirmed that the parties had agreed to the offer submitted by Fiala. Third, it is undisputed that the parties appeared with their attorneys in open court and announced the agreement before the judge as part of the divorce proceeding. Hagerman admits that she was present and that Childers was representing her. She also acknowledges that, when the judge asked her if the agreement was accurate, she responded that its "essential terms" had been stated. Charles Hagerman and Gerrich both testified that the judge asked both parties if the agreement had been accurately stated and that they both responded affirmatively. Finally, it is undisputed that Childers sent a third letter to Gerrich, confirming that the Hagermans had agreed in open court to sell the tractor/trailer to Fiala for $38,500.

13

Hagerman claims that all of this evidence should be ignored because Childers was acting without her authority. Hagerman, however, presented no evidence to demonstrate that Childers was not authorized to act on her behalf in this divorce proceeding. To the contrary, the record reflects that she hired him to represent her in the divorce and discussed with him from the beginning that selling the tractor/trailer would be a part of that proceeding. Also, Hagerman was present when Childers took important actions, such as announcing the agreement in court, and never objected to his actions or claimed that he was unauthorized to act. Absent evidence that Hagerman had limited the scope of her attorney's authority, Childers is presumed to have acted with the proper authority to represent Hagerman in the divorce proceeding. *See* Tex. Disciplinary R. Prof'l Conduct 1.02. Thus, Hagerman has failed to show that Childers's actions were unauthorized as to negate her consent to the sale.

Hagerman also claims that the agreement announced in open court was invalid because it did not conform to Arizona Rule of Civil Procedure 80(d). Rule 80(d) states that an "agreement or consent between parties or attorneys in any [disputed] matter" is binding only if it "is in writing, or *made orally in open court, and entered in the minutes*." Ariz. R. Civ. P. 80(d) (emphasis added). Here, the attorneys announced the agreement in open court, and the court entered into the minutes that the "parties have agreed to sell the [tractor/trailer] for the sum of $38,500.00." Thus, the procedure followed in this case expressly tracked the rule's requirements. As such, the agreement was binding. *See id.* We are unpersuaded by Hagerman's argument that, to make an agreement valid under rule 80(d), a court reporter must be present and the agreement must appear

14

in the reporter's record. Nothing in the rule contains such a requirement. Rather, it expressly states that the entry shall be made in the "minutes," as was done here.[8]

Thus, Wells Fargo, Schwausch, Majestic Trucking, and Associates proved that—at the time the bank transferred title of the tractor/trailer to Fiala, Associates financed Fiala's purchase, and Majestic Trucking leased the tractor/trailer from Fiala—Hagerman was not the legal owner of the tractor/trailer because she had consented to sell it to Fiala and had entered a binding agreement for this purpose. *Robinson v. National Autotech, Inc.*, 117 S.W.3d 37, 39-40 (Tex. App.—Dallas 2003, pet. denied) ("There can be no conversion where the owner has expressly or impliedly assented to the taking or disposition."). Because no genuine issue of material fact remained on Hagerman's conversion claim, the trial court did not err in granting summary judgment on this cause of action.

### Money had and received

Money had and received is an equitable action that may be maintained to prevent unjust enrichment when one person obtains money, which in equity and good conscience belongs to another. *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 860 (Tex. App.—Fort Worth 2005, no pet.); *J.C. Penney v. Pitts*, 139 S.W.3d 455, 462 n.4 (Tex. App.—Corpus Christi 2004, no pet.). A cause of action for money had and received is not based on wrongdoing but instead, "looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997,

---

[8] Our review of the Arizona procedural rules reveals several instances where a "minute entry" is the procedure required. *See, e.g.*, Ariz. R. Civ. P. 4, 16, 29, 49, 52, 58.

15

no writ). It is essentially an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

The basis of Hagerman's money had and received claim is that the money generated from Fiala's lease of the tractor/trailer to Majestic Trucking rightfully belonged to Hagerman as the owner. Hagerman alleged that, because she had not consented to the sale, she was entitled to receive all of the resulting income from the lease. We disagree.

As discussed regarding Hagerman's conversion claim, the evidence conclusively demonstrates that Hagerman consented to the sale of the tractor/trailer to Fiala. Because Hagerman was not the rightful owner of the tractor/trailer at the time Fiala leased it to Majestic Trucking, no genuine issue of material fact remains about her claim for money had and received. Thus, the trial court did not err in granting summary judgment on this cause of action.

### Conspiracy

Civil conspiracy is a "derivative tort," meaning that "liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Because there was no evidence to establish either conversion or money had and received, the trial court correctly determined that there was no evidence to support Hagerman's claim that the appellees conspired to convert her property or to deprive her of her money. Accordingly, no genuine issue of material fact remained about Hagerman's conspiracy claim, and the trial court did not err in granting summary judgment on this cause of action.

16

**Waiver of Attorney-Client Privilege**

As part of its July 29 order, the trial court determined that Hagerman had waived her attorney-client privilege to permit Associates to discover evidence related to Hagerman's and Childers's communications about the sale of the tractor/trailer. This waiver was based on the "offensive use" doctrine.

As stated by the supreme court, "a privilege may be waived by offensive use. 'A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.'" *National Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 461 (Tex. 1993) (citations omitted). Under the offensive use doctrine, the attorney-client privilege may be waived if the party asserting the privilege uses it as a sword rather than a shield. *Warrantech Corp. v. Computer Adapters Servs.*, 134 S.W.3d 516, 525-26 (Tex. App.—Fort Worth 2004, no pet.) (citing *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993)). The following factors guide a court in determining whether a waiver under the offensive use doctrine has occurred: (1) the party asserting the privilege must seek affirmative relief; (2) the information must be such that if believed by the fact-finder, in all probability, it would be outcome determinative of the cause of action, *i.e.*, it must go to the very heart of the affirmative relief sought; and (3) the disclosure of the confidential communication must be the only means by which the aggrieved party can obtain the evidence. *In re Southwest Airlines Co.*, 155 S.W.3d 622, 624 (Tex. App.—San Antonio 2004, no pet.).

First, Hagerman was seeking affirmative relief because she was attempting to hold appellees liable for various transactions surrounding the sale of her tractor/trailer based on her claim

that she objected to the sale. Second, the information upon which the privilege was waived—communications between Hagerman and Childers concerning the sale agreement—would be outcome determinative because Hagerman's claim of "lack of consent" to the sale turned on her allegation that Childers was not authorized to announce and finalize the sale agreement on her behalf. As demonstrated by the above summary-judgment analysis, this went to the heart of an essential element in each of Hagerman's claims. On one hand Hagerman was attempting to claim that the sale was invalid because it was entered into without authorization by her attorney but, on the other hand, she was attempting to drop an iron curtain to conceal what authority she had given her attorney to enter the sale agreement. *National Union Fire Ins.*, 863 S.W.2d at 461. Finally, there was no alternative way for appellees to obtain evidence regarding the scope of Childers's authority to represent Hagerman short of discovering the communications between attorney and client. Thus, the trial court did not err in ordering that Hagerman's attorney-client privilege had been waived to the extent that it protected communications between her and Childers regarding the sale of the tractor/trailer. *See In re Southwest Airlines Co.*, 155 S.W.3d at 624.

**Sanctions for Discovery Abuse**

We review a trial court's imposition of sanctions for an abuse of discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006). The ruling will be reversed only if the trial court acted "without reference to any guiding rules and principles," such that its ruling was arbitrary or unreasonable. *Id.* (citation omitted). In determining whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991). The supreme court has articulated a

18

two-part inquiry that appellate courts must conduct in making this determination. *Id.* at 917. First, we must ensure that there is a direct relationship between the improper conduct and the sanction imposed. *Id.* Second, we must make certain that less severe sanctions would not have been sufficient to promote compliance. *Id.*

We first address the trial court's imposition of monetary sanctions on Hagerman. She was sanctioned $1,000 and $1,500 to compensate Associates for the attorneys' fees it incurred as a result of Hagerman's failure to comply with discovery requests and orders. Texas Rule of Civil Procedure 215.2(b) provides that,

> If a party . . . fails to comply with proper discovery requests or to obey an order to provide or permit discovery, . . . the court in which the action is pending may, after notice and hearing, make such orders in regard to the failure as are just, and among others the following: . . .
>
> (2) an order charging all or any portion of the expenses of discovery . . . against the disobedient party . . . ; and
>
> (8) In lieu of any of the foregoing orders or in addition thereto, the court *shall require* the party failing to obey the order . . . to pay, at such time as ordered by the court, the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Tex. R. Civ. P. 215.2(b) (emphasis added).

Hagerman's failures to comply with the rules of discovery began in December 1999, when she refused to respond to Associate's first request for production. Although she promised on the record in May 2000 to provide responsive documents, she failed to do so. In July 2000, she failed to respond to Associates's second request for production. On July 29, the court ordered her

to produce these documents, yet refused to sanction Hagerman for Associates's attorneys' fees. When the initial order proved ineffective, Associates filed a second motion to compel, which the court granted on October 9, 2000, entering monetary sanctions of $1,000 for the first time against Hagerman to compensate Associates for its resulting attorneys' fees. Hagerman's refusal to comply with the court's orders continued, resulting in a third motion by Associates, which was granted on December 7, 2000. In connection with this order, the trial court sanctioned Hagerman an additional $1,500 for Associates's attorneys' fees.

Given Hagerman's repeated failures to comply, as well as the court's initial attempts to impose lesser sanctions, it is apparent from the record that less severe sanctions would not have been sufficient to promote compliance in this case. *See TransAmerican*, 811 S.W.2d at 916. Also, because Hagerman was proceeding *pro se* and because the sanctions were imposed in connection with motions to compel production of the documents that she continually failed to produce, there is no question that a direct relationship existed between the improper conduct and the sanction imposed. *Id*. Additionally, the imposition of sanctions to compensate for the attorneys' fees of a party that has suffered delay as a result of the disobedient party's discovery abuse is expressly permitted by Rule 215.2(b). *See* Tex. R. Civ. P. 215.2(b). In fact, subpart (b)(8) mandates that the court *shall* impose such monetary sanctions unless there are contrary reasons for not doing so. *Id*. Here, the trial court conducted the necessary hearing and possessed the necessary evidence to demonstrate that such sanctions were just. *Id*. Accordingly, on this record we cannot say that the trial court abused its discretion in imposing sanctions of $1,000 and $1,500 on Hagerman to

20

compensate Associates for the attorneys' fees it incurred as a result of her failures to comply with discovery requests and orders. *See American Flood Research*, 192 S.W.3d at 583.

We next turn to the evidentiary sanctions imposed by the trial court on December 7: entering a finding that "Hagerman consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500" and ordering that "Hagerman is further precluded from introducing any evidence to deny that she consented to the sale of the Tractor and Trailer to Keith Fiala for $38,500." In addition to an award of monetary sanctions, Rule 215.2(b) also permits the trial court, after notice and a hearing, to enter against a party who has failed to comply with discovery orders or requests:

> (3) an order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order; [and/or]

> (4) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

Tex. R. Civ. P. 215.2(b). Here, the court's judicial determination that Hagerman had consented to the sale falls squarely under subpart (b)(3), and the court's order precluding Hagerman from introducing contrary evidence falls squarely under subpart (b)(4). *See id.* Thus, our inquiry turns on whether such sanctions were reasonable pursuant to the two-factor *TransAmerican* inquiry. *See* 811 S.W.2d at 916.

Before entering these evidentiary sanctions on December 7, the trial court had ordered Hagerman on July 29 and October 9 to produce the documents relating to whether or not she had authorized Childers to announce and finalize the sale on her behalf, and Hagerman had repeatedly

21

refused to comply. On the other hand, appellees had put forth documentary evidence demonstrating that Hagerman had expressly consented to the agreement, including: (1) a minute entry by the Arizona court reflecting that the parties had agreed in open court to the sale; (2) testimony by Hagerman, Charles Hagerman, and Gerrich that Hagerman had confirmed the agreement's accuracy for the Arizona court; (3) a series of letters by Childers demonstrating that Hagerman had reviewed the terms of the offer and that both the Hagermans had agreed in open court to the final agreement; and (4) notes from Childers's initial client meeting with Hagerman demonstrating that she had authorized him to represent her in the sale of the tractor/trailer as part of her divorce proceeding.

After more than a year of Hagerman failing to comply with discovery requests and orders to produce evidence that would demonstrate Childers was not authorized, the trial court entered a judicial finding that Hagerman had consented to the sale and precluded Hagerman from offering evidence to demonstrate otherwise. These sanctions were directly related to Hagerman's improper conduct and, as shown by Hagerman's refusal to comply with the less severe sanctions previously entered, less severe sanctions would not have been sufficient to promote compliance in this case. *See id.* Notably, although Associates had requested evidentiary sanctions in connection with the October 9 order, the trial court refused to impose them at that time, instead providing Hagerman one more opportunity to comply. It was not until Hagerman again failed to produce the documents that the court imposed these evidentiary sanctions on December 7.

Hagerman presents three arguments to challenge the fairness of these sanctions: (1) the court's orders to produce were too vague; (2) she had attempted to produce the documents by offering to sign a waiver related to her new attorney's, Miller's, file; and (3) there were no additional

22

relevant documents beyond what had been produced. We are not persuaded by any of these arguments. First, each of the trial court's orders clearly delineated which documents Hagerman was to produce. No party seemed to misunderstand that the desired documents were those demonstrating communications between Hagerman and Childers related to the sale of the tractor/trailer. This was not an overly broad or vague request, especially considering that Childers's representation of Hagerman began in May 1997 and that the agreement and sale transaction were concluded by July 1997. Second, Hagerman's statement that she would sign a waiver if Associates prepared it, so that Associates could then bear the responsibility of obtaining and copying Miller's file, was an insufficient and untimely response to the previous discovery orders and requests. She did not make this statement until nearly two months after she had first been ordered to produce documents evidencing the communications at issue, and in any event, the burden of producing the documents remained on Hagerman. *See* Tex. R. Civ. P. 193.1. Finally, Hagerman's personal assessment that none of the unproduced documents provided relevant information is not a sufficient excuse. Hagerman does not deny that there were additional documents in Miller's file that had been forwarded from Childers. Instead, she claims that upon receipt of these documents, she reviewed them and determined that there was only one document providing any new information.[9] Associates was not bound to rely on Hagerman's interpretation of what documents were necessary. Hagerman should have simply produced the entire file to Associates, as she had been repeatedly ordered to do. Also, although Hagerman claims to have produced several relevant documents as exhibits attached

_____

[9] Hagerman also claims that Childers produced the entirety of his existing file. While this may be true, Childers testified that he had only a few copies of documents remaining from his representation of Hagerman and that he had forwarded the entire original file to Miller.

23

to a separate, unrelated filing, this does not satisfy the procedure for responding to a request for production. *See id.*

Thus, we cannot say on this record that the trial court abused its discretion in entering these evidentiary sanctions based on Hagerman's abuse of the discovery process.

**Dismissal for Want of Prosecution**

Trial courts have inherent authority to dismiss a case for want of prosecution when a plaintiff fails to prosecute her case with due diligence. *Villarreal v. San Antonio Truck & Equip.*, 994 S.W.2d 628, 630 (Tex. 1999). However, before such a dismissal can occur, the party must be provided with notice and an opportunity to be heard. *Id.* In determining whether a case should be dismissed for want of prosecution, the trial court may consider the entire history of the case, including the length of time the case was on file, the amount of activity in the case, the request for a trial setting, and the existence of reasonable excuses for delay. *State v. Rotello*, 671 S.W.2d 507, 509 (Tex. 1984). No single factor is dispositive. *Houston v. Robinson*, 837 S.W.2d 262, 264 (Tex. App.—Houston [1st Dist.] 1992, no writ).

We review a dismissal for want of prosecution under a clear abuse of discretion standard, and the central issue is whether the plaintiff exercised reasonable diligence. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Because this is a matter committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Id.* We must affirm if any legal theory

for the dismissal is supported by the record. *See Point Lookout West, Inc. v. Wharton*, 742 S.W.2d 277, 278 (Tex. 1987).

Here, the trial court placed Hagerman's case on the dismissal docket when she failed to take any action in the trial court for a two-year period following the court's grant of summary judgments in favor of four of the six defendants/appellees. Hagerman received notice of this action and appeared at the dismissal hearing. The only excuse offered by Hagerman at the hearing was that she had twice attempted to call the trial court but had received no help. She could not tell the court when she had tried to call, whom she had spoken with, or what the contents of the conversations were. The court determined that Hagerman's excuse was insufficient, especially in light of the fact that she had proven her ability to complete several legal tasks more difficult than setting a case for trial, which is the step she needed to take on the remaining claims against Charles Hagerman and Fiala. The court further noted that it had already "bent over backwards [to assist Hagerman] time and time again." Accordingly, the court signed an order of dismissal on November 24, 2003. Hagerman urges this Court that it was unfair to dismiss her case because she, as a *pro se* litigant, "was unsure of how to proceed with getting the remaining defendants to trial."

Considering the entire history of the case, including (1) Hagerman's repeated failures to comply with the court's orders and cause delay; (2) the fact that the case had been pending for four years, with no activity in the last two years; and (3) Hagerman's lack of a reasonable excuse for the delay, we cannot say on this record that the trial court abused its discretion in dismissing Hagerman's case for a want of prosecution based on her lack of due diligence. *See Rotello*, 671 S.W.2d at 509; *Point Lookout West*, 742 S.W.2d at 278; *see also Green v. Kaposta*, 152 S.W.3d 839, 841, 843 (Tex.

25

App.—Dallas 2005, no pet.) (noting that "a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure," and concluding record did not demonstrate abuse of discretion in court's dismissal for want of prosecution).

## CONCLUSION

Because the trial court did not err in granting summary judgment, ordering that Hagerman waived her attorney-client privilege, sanctioning Hagerman, or dismissing her case for want of prosecution, we overrule each of Hagerman's issues and affirm the judgment of the trial court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed:   August 25, 2006